PEOPLE v FREEMAN

Docket No. 78038. Submitted August 13, 1985, at Lansing.—Decided September 20, 1985.

Clyde W. Freeman was found guilty of uttering and publishing a forged instrument by a jury in Genesee Circuit Court and was sentenced to a prison term of from 4 to 14 years, Philip C. Elliott, J. Defendant appealed. *Held:*

1. The trial court did not err in allowing the prosecutor to question the victim concerning the defendant's attempt to extort money from him for the return of legal papers and other property which defendant allegedly took from the victim's home. The extortion testimony was introduced not to establish the defendant's bad character, but rather to show that the defendant possessed documents containing the victim's signature which could be used in forging the signature on the check and to defeat defendant's claim that the victim had given him the check voluntarily in exchange for homosexual acts. The evidence was properly admitted.

2. Defendant's failure to request a jury instruction that the extortion evidence could not be used by the jury to infer the defendant's guilt precludes defendant's obtaining any relief due to the trial court's failure to so instruct the jury.

3. The trial court did not err in refusing to give the standard jury instruction on specific intent as requested by defendant. The instructions given contained all the information required by the jury to return a proper verdict.

4. The trial court did not err in failing to instruct the jury on a "claim of right" defense. Defendant did not present any evidence relating to such a defense and never requested that the issue be discussed within the context of the specific intent instruction.

5. The trial court did not err in failing to read the portion of the standard jury instruction which relates to reasonable

REFERENCES

Am Jur 2d, Appeal and Error §§ 545 *et seq.*
Am Jur 2d, Criminal Law §§ 525 *et seq.*
Am Jur 2d, Trial §§ 573-930.
See the annotations in the ALR3d/4th Quick Index under Intent; Instructions to Jury; Sentence and Punishment.

doubt. The jury was properly instructed as to all pertinent aspects of the specific intent element.

6. The sentence imposed on defendant is not excessive under the circumstances of this case.

Affirmed.

1. CRIMINAL LAW — JURY INSTRUCTIONS — PRESERVING QUESTION.

A verdict will not be set aside on the basis of an alleged error in the jury instructions where no objection was made to the alleged error at trial unless it has resulted in a miscarriage of justice; that is, where the erroneous or omitted instructions pertain to a basic and controlling issue in the case.

2. CRIMINAL LAW — JURY INSTRUCTIONS — SPECIFIC INTENT.

It is not error for a trial court to fail to charge a jury in a criminal trial as to specific intent in the language found in the Criminal Jury Instructions where the court otherwise instructs the jury adequately as to the requisite specific intent.

3. CRIMINAL LAW — APPEAL — SENTENCING.

A criminal defendant may request review of the exercise of a trial court's discretion in imposing sentence, but relief will be granted only where it is found that the trial court abused its discretion to the extent that the sentence shocks the conscience of the appellate court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Kim Donald Shaw,* for defendant on appeal.

Before: DANHOF, C.J., and V. J. BRENNAN and J. H. GILLIS, JR.,* JJ.

PER CURIAM. Defendant was convicted of uttering and publishing a forged instrument, MCL 750.249; MSA 28.446, and was sentenced to a prison term of from 4 to 14 years. He appeals from the conviction as of right.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

At trial, the 73-year-old victim testified that he met the defendant in a bar on November 16, 1983. After a few drinks, the victim invited the defendant to his home for the purpose of a homosexual encounter. The next morning, after defendant had gone, the victim received a call from his bank inquiring as to whether he had written a check to the defendant in the amount of $200. The victim denied having done so and was advised to call the police. Upon searching his house to determine if anything had been stolen, the victim discovered his citizenship papers, his will, his sister's ring and an amount of cash were missing in addition to the check.

The bank teller testified that the defendant presented her with a $200 check written on the victim's account. Upon inspecting the victim's signature card, the teller became suspicious because the signature on the check did not match. After placing the call to the victim, she returned to find that the defendant had left the bank.

On appeal, defendant first assigns error to the trial court's ruling which permitted the prosecutor to question the victim concerning the defendant's attempt to extort $50 from him for the return of his legal papers and other property. Defendant contends that admission of the evidence violated MRE 404(b) since the evidence was indicative of another crime and would tend to show the defendant's bad character. We reject the argument and conclude that the evidence was relevant and probative. The extortion testimony was introduced not to establish the defendant's bad character, but rather to show that the defendant possessed documents containing the victim's signature, which could be used in forging the signature on the check, and to defeat the defendant's claim that the victim had given him the check voluntarily in

exchange for homosexual acts. The evidence was properly admitted.

Defendant additionally argues that the trial court should have instructed the jury that the extortion evidence, revealing defendant to be a "bad" person who commits other crimes, could not be used by the jury to infer the defendant's guilt. However, defendant's failure to request such an instruction, which did not pertain to a basic and controlling issue in the case, precludes defendant from obtaining the relief requested. *People v Seabrooks,* 135 Mich App 442, 454; 354 NW2d 374 (1984).

Defendant next complains of the trial court's refusal to give CJI 3:1:16, the standard jury instruction on specific intent, which, at the time of trial, provided:

"When a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist.

"Intent is a decision of the mind to knowingly do an act with a conscious [fully formed] objective of accomplishing a certain [specific] result.

"There can be no crime of _____ under our law where there is no intent to _____ and the burden rests upon the prosecution to show beyond a reasonable doubt that the defendant at the time of doing the alleged act had that wrongful intent.

"The intent with which a person does an act is known by the way in which he expresses it to others or indicates it by his conduct. The intent with which a person does an act can sometimes be determined from the manner in which it is done, the method used and all other facts and circumstances, but only if that intent is established by the evidence.

"[At this point read instructions relative to defenses which have been raised which would negate intent, *i.e.,* intoxication, claim of right, etc.]

"If you find that the defendant, for any reason what-

soever, did not consciously and knowingly act with the intent to _____, the crime cannot have been committed and you must find the defendant not guilty of the crime of _____.

"If from all of the evidence you have a reasonable doubt as to whether or not the defendant knowingly and consciously acted with the intent to _____, then you must find the defendant not guilty of the crime of _____."

The court chose instead to instruct the jury as follows:

"The defendant is charged with the crime of uttering and publishing. He pleads not guilty. To establish the charge against him, the prosecution must prove beyond a reasonable doubt each of the following elements:

"First, that the check, marked Exhibit 1, was in fact forged. Forgery includes any act which fraudulently makes the check purport to be that which it is not. If someone other than Mr. Gallant signed the check, the check would have been forged;

"Second, that the defendant represented, either by words or actions, or both, that the check was genuine or good and presented it to be cashed;

"Third, that the defendant knew at the time that the check was forged and false; and

"Fourth, that the defendant intended to obtain money falsely and, thus, defraud or cheat. To act with the intent to cheat or defraud means to deceive and, ordinarily, to act with the purpose of some financial gain for oneself, knowing that it would cause a financial loss to someone else.

"There can be no crime of uttering and publishing unless the defendant intended to cash the check and obtains its proceeds falsely and, therefore, cheat or defraud someone of the money.

"The knowledge of the person doing an act and the intent with which the act is done may be shown by the circumstances attending the act, what is done, how it is done, what it is done with, anything said or done before, at the time, or later and what human experi-

ence would reasonably expect to be the natural or likely result. Sometimes actions speak louder than words.

"It is not necessary that the defendant know or care whether it will be the bank, the cashier, or Mr. Gallant who would be hurt financially, so long as he intended that someone would be out of the money fraudulently that he would obtain by cashing the check.

"Also, it is not necessary that the check be received as genuine and be approved for cashing or in fact be cashed, so long as the defendant attempted to defraud by representing somehow that the check was good when he knew it was forged. So, naturally, it is unnecessary that anyone actually suffer a financial loss. It is enough if the check was offered directly or indirectly by words or actions as genuine or good with the intent to cheat or defraud.

"It is not important whether the defendant forged the check himself or had another person do it."

To begin, we note that whether CJI 3:1:16 need be given at all, even when requested by the defense, was recently called into question by Judge W. J. GIOVAN in his concurring opinion in *People v Strong,* 143 Mich App 442; 372 NW2d 335 (1985). Judge GIOVAN noted that the majority of the standard instruction is merely a partisan restatement of instructions routinely given, *i.e.,* that specific intent is an element of the crime and that a finding of guilt requires proof of each element beyond a reasonable doubt. Judge GIOVAN continued:

"Once these propositions are clearly established by jury instruction, to go on to give CJI 3:1:16 is to imply that the issue of specific intent has some special significance in the case or that there is some infirmity of proof regarding that element. If either proposition is to be advanced, the argument should be made by counsel rather than by the implication of instructions from the court.

"While it hardly requires citation of authority to say that jury instructions should not be argumentative, it is relevant to observe that long ago Justice COOLEY disparaged requests to charge which were similar in effect to the specified paragraphs of CJI 3:1:16.

" 'The defence is not entitled of right to put an argument into the instructions; that must be left to counsel. Neither is he entitled of right to have from the judge any comment upon the evidence, or any pointing out of the weak points in the case of the State, so far as they involve questions of fact and not of law. All that can be demanded is, correct instructions on the legal points and no incorrect or unfair comments upon or presentation of the evidence.' *People v Crawford,* 48 Mich 498, 501; 12 NW 673 (1882)." *People v Strong, supra,* p 455 (GIOVAN, J., concurring).

We find these observations intriguing and worthy of serious consideration in the future. However, the present case may be disposed of on the grounds that the instruction given contained all the information required by the jury to return a proper verdict. Defendant claims that the instruction given was deficient in that it failed to indicate that the prosecutor had the burden of proving beyond a reasonable doubt that the defendant had the specific intent to commit the crime. While it is true that the trial judge did not discuss the prosecutor's burden during the specific intent portion of the instruction, he did state that "the prosecutor must prove beyond a reasonable doubt each of the following elements"; he then listed the specific intent element. This was sufficient to inform the jury of the burden of proof.

Defendant next claims that the instruction was deficient in that it did not reveal that the crime cannot be completed if the defendant did not have the requisite intent. We believe this issue was indeed addressed when the trial court stated: "There can be no crime of uttering and publishing

unless the defendant intended to cash the check and obtain its proceeds falsely and, therefore, cheat or defraud someone of the money."

Next, defendant assigns error to the trial court's failure to instruct the jury on a "claim of right" defense. Again, we reject defendant's argument since he did not present any evidence relating to such a defense. Further, he never requested that the issue be discussed within the context of the specific intent instruction. A trial court certainly cannot be expected *sua sponte* to instruct the jury regarding a defense as to which no evidence has been presented.

Defendant further claims that the trial court erred in failing to read the portion of the standard jury instruction which relates to reasonable doubt. However, the trial court fully discussed the issue of reasonable doubt in connection with the defendant's guilt prior to discussing the elements of the offense. Again, we conclude that the jury was properly instructed as to all pertinent aspects of the specific intent element. The trial court's refusal to read CJI 3:1:16 could not have infringed upon defendant's chances of acquittal since, in doing so, the court would have offered the jury only repetition.

Defendant's final claim of error concerns the imposition of a sentence of from 4 to 14 years in prison, which defendant contends is excessive under the circumstances of this case. This Court may not afford a defendant relief from the sentence imposed by the trial court unless it finds an abuse of discretion to the extent that it shocks the conscience of the Court. *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983). We find no such abuse of discretion. Rather than simply a typical uttering and publishing offense, the defendant's repre-

hensible behavior was properly noted by the trial judge:

"First of all, in addition to going to a bank and trying to cash a forged check on the account of a man—the man whose check it was that crime is more serious than simply trying to pass a forged check. He took advantage of an old homosexual, to whose home he went for homosexual purposes. While he was there, he stole other things in addition to the check and checkbook. Then he tried to sell back some of the things that he had stolen."

The trial court noted further:

"The history from the Battle Creek hospital includes, among other things, 'He shoots in cocaine as much as he can get available, at least five to six times a day.' And that he states he obtains money from stealing things as the source of his ability to buy the cocaine that he sticks in his arms five or six times a day.

"I am simply pointing out he is a much more serious offender than the ordinary person that goes into a bank with a bad check."

The court concluded by rejecting outright defendant's attempt to explain away his actions with the assertion that he was given possession of the documents as a form of collateral until the check was cashed. The trial court found this explanation to be absurd and indicative of the defendant's poor prospects for rehabilitation, and we agree. Under the circumstances, we find the sentence imposed upon the defendant to be entirely appropriate. The defendant's conviction and sentence are therefore affirmed.

Affirmed.