*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEVIN WHITE, JR.,

        Defendant-Appellant.

UNPUBLISHED
September 3, 2020

No. 346661
Livingston Circuit Court
LC No. 18-025036-FH

ON REMAND

Before: MURRAY, C.J., and METER and FORT HOOD, JJ.

PER CURIAM.

This matter returns to this Court on remand from our Supreme Court. This Court's unpublished opinion concluded that the Livingston Circuit Court was the proper venue to try this matter, which is a prosecution for the delivery of controlled substances causing death, because defendant understood that the drugs he sold in Macomb County would be consumed in Livingston County. *People v White*, unpublished per curiam opinion of the Court of Appeals, issued September 12, 2019 (Docket No. 346661), p 3, reversed and remanded 941 NW2d 59 (Mich, 2020). Our Supreme Court has reversed and remanded this Court's decision:

> . . . for consideration of the issues raised by the prosecutor, but not addressed by that court in its initial review of this case. Contrary to the determinations of the trial court and the Court of Appeals, there is no record evidence that the defendant knew that the person to whom he delivered the controlled substance had moved from Macomb County to Livingston County and that the controlled substance would be consumed in Livingston County. Thus, the record does not support the Court of Appeals' holding that the defendant intended the felony or acts done in perpetration of felony [sic] to have an effect in Livingston County. See MCL 762.8; *People v McBurrows*, 504 Mich 308 (2019). [*People v White*, 941 NW2d 59 (Mich, 2020.]

We again conclude that venue is appropriate in Livingston County. As will be explained below, defendant undoubtedly sold the controlled substance in Macomb County, which would mean that venue is proper in Macomb County if defendant were being charged with a crime for that specific delivery. *McBurrows*, 504 Mich 308. However, in this case, defendant is not being charged in Livingston County for that delivery. Rather, he is being charged for aiding and abetting a delivery that occurred later in Livingston County. As defendant has been bound over for aiding and abetting the delivery that took place in Livingston County, venue lies in Livingston County.

## I. FACTUAL BACKGROUND

The basic facts are as follows. "[O]n October 24, 2017, the decedent, Thomas Whitlow, Jr., traveled with three companions—his mother, Kelly Whitlow; Kelly's boyfriend, Craig Betke; and Kelly's friend, Danielle Hannaford—from Betke's home in Howell, Michigan, to a gas station in Macomb County, Michigan, to meet defendant for the purpose of purchasing heroin and cocaine." *White*, unpub op at 1 (Docket No. 346661). Hannaford went to defendant's vehicle, got inside, and purchased substances from defendant. *Id.* Kelly Whitlow, Thomas Whitlow, Betke, and Hannaford drove back to Betke's home in Howell (which is in Livingston County). *Id.* Later that day, Thomas Whitlow died of "fentanyl and cocaine toxicity." *Id.*

Defendant has been charged in Livingston County with "aiding and abetting delivery of a controlled substance causing death, MCL 750.317a . . . ." *Id.* The delivery he is alleged to have aided is one that took place in Livingston County, where it is alleged that Hannaford delivered the substances she purchased from defendant to Thomas Whitlow. Defendant has *not* been charged with the delivery that took place inside defendant's vehicle in Macomb County.[1]

Defendant filed a motion to dismiss arguing that under *McBurrows*, venue was not in Livingston County because defendant never stepped foot in Livingston County, and under *McBurrows*, the place of delivery is the county in which venue lies, regardless of where the death occurs, where a defendant is charged with delivering a controlled substance causing death. The prosecutor argued that venue was in Livingston County because defendant was being charged with aiding and abetting a delivery that did occur in Livingston County. And if the trial court did believe that venue did not lie in Livingston County, the prosecutor argued that the remedy would be to order a change of venue, not outright dismissal. The trial court denied the motion, explaining:

---

[1] This Court's prior unpublished opinion explains that defendant was charged under an aiding-and-abetting theory and that Hannaford was charged for delivering a controlled substance to Thomas Whitlow. *White*, unpub op at 1, 2 n 2 (Docket No. 346661). That would seem to reflect an understanding that defendant was charged in relation to the delivery between Hannaford and Thomas Whitlow, not the delivery from defendant to Hannaford. However, the opinion describes the delivery that took place in Macomb County as "the delivery," *id.* at 1, and ultimately explains that venue was appropriate in Livingston County because "defendant understood that his felony would have an effect in that county, and indeed, by selling the controlled substances to Thomas and his companions, defendant intended that effect," *id.* at 3-4. As a matter of clarification, we understand on remand that defendant was charged with aiding and abetting Hannaford's delivery to Thomas Whitlow, not for the delivery defendant made to Hannaford.

I think that in light of what I can recall from the preliminary exam evidence, that there was a significant enough nexus between Mr. White and the people with whom he was selling to that, uh, he was joined, joining in with the, uh, the other co-defendants that ultimately resulted in the death of the decedent here and that, uh, the nexus is that there was a relationship enough with White and, uh, Hann[a]ford, and Whitlow that ultimately got those drugs into the decedent's hands. He knew those drugs were coming to Livingston County. That's where those, that's where Hann[a]ford and Whitlow were coming from to meet him.

So, uh, that being said, I think this case is distinguishable from *McBurrows* and, uh, under the aider and abettor theory and criminal enterprise theory. I mean, it was clear where these drugs were going to and how they got here and how, uh, White was in, working in, basically in conjunction with Hann[a]ford and Whitlow to move these drugs and ultimately knew these drugs were going to end up in Livingston County because that's where Hann[a]ford and Whitlow resided at the time. He just met them over there to go get them and they had a long[-]standing relationship.

So I think there's enough difference between *McBurrows* and our case for me to deny the defendant's motion to dismiss this case. So for those reasons, I deny the motion to dismiss.

This Court granted defendant's application for leave to appeal. *People v White*, unpublished order of the Court of Appeals, entered April 9, 2019 (Docket No. 346661). On appeal, defendant argued that the crime (to the extent there was probable cause to believe it actually happened) took place in Macomb County because that is where defendant was alleged to have sold drugs. Defendant argued that under *McBurrows*, venue was clearly in Macomb County, as defendant had never even stepped foot in Livingston County. Defendant argued that the trial court erred by "finding a 'nexus' between the drug transaction in Macomb County and the death in Livingston County." According to defendant, the question was where the crime was committed and completed. While not directly arguing the merits of the prosecutor's aiding-and-abetting theory, defendant stated, "For this Defendant-Appellant (though perhaps not for Co-Defendant Danielle Hann[a]ford) such entirely occurred, began and ended in Macomb County."

The prosecutor explained that under MCL 762.8, "whenever a felony consists of, or is the culmination of, two or more acts done in the perpetration of that felony, the felony may be prosecuted in any county where any of those acts were committed or in any county that the defendant intended the felony or acts done in perpetration of the felony to have an effect." The prosecutor argued that defendant "aided and abetted Hannaford's delivery of heroin to Tommy Whitlow." Defendant aided that delivery by placing the drugs into the stream of commerce when he sold them to Hannaford. This case was distinguishable from *McBurrows* because in that case, all of the criminal acts occurred in Wayne County, although the death occurred elsewhere. In the present case, Hannaford's delivery took place in Livingston County, making venue proper in Livingston County. Finally, the prosecutor argued that if this Court determined that venue did not lie in Livingston County, the proper remedy was not dismissal. Rather, the prosecutor argued that the appropriate remedy would be to transfer the action to the county where venue lies.

This Court's unpublished opinion concluded that venue was appropriate in Livingston County pursuant to MCL 762.8. Under this statute, if a felony consists of two or more acts, venue is proper in any county where any of the acts were committed, or "in any county that the defendant intended the felony or acts done in perpetration of the felony to have an effect." MCL 762.8. While defendant argued that the statute did not authorize venue in any county where a criminal act happened to have an effect, this Court was "inclined to agree with the trial court . . . that defendant's act did not merely happen to have an effect in Livingston County." *White*, unpub op at 3 (Docket No. 346661). Rather, this Court agreed with the trial court's conclusion, holding that defendant "sold the substances with the understanding that they would be *consumed and with knowledge of where that would happen*." *Id*. (emphasis added). Thus, and "although *McBurrows* would generally provide that venue was only proper in Monroe County because that is where the delivery occurred, MCL 762.8 provides that venue is also proper in Livingston County because defendant understood that his felony would have an effect in that county, and indeed, by selling the controlled substances to Thomas and his companions, defendant intended that effect." *Id*. at 3-4. This Court declined to address the two arguments made by the prosecutor: "the argument that *McBurrows* does not apply to cases premised on aiding and abetting, nor the argument that the trial court would be obligated to transfer venue had venue actually been improper." *Id*. at 4.

Both parties sought reconsideration in this Court. The prosecutor's motion was filed first. According to the prosecutor, by avoiding considering the prosecutor's aiding-and-abetting theory and instead deciding the case as it did, this Court inadvertently created an additional element for establishing venue: that the defendant knew that the effects of his drug sale would likely be felt in the county where the prosecution is brought. Defendant's motion argued that this Court made a factual error by agreeing with the trial court's conclusion that defendant understood that his drug sale would have an effect in Livingston County. Defendant then argued that the prosecutor's aiding-and-abetting theory must fail. Defendant argued that for such a theory of guilt to be successful, defendant would have to have had advance knowledge that Hannaford would give drugs to Thomas Whitlow. Defendant argued that there was no evidence of that fact in the record. This Court denied both motions for reconsideration. *People v White*, unpublished order of the Court of Appeals, entered October 24, 2019 (Docket No. 346661).

Defendant sought leave to appeal in the Supreme Court. Defendant again argued that *McBurrows* was controlling. Defendant also argued that the trial court and this Court were wrong to conclude that defendant knew the drugs would be consumed in Livingston County, as there was no evidence that defendant knew Hannaford and Kelly Whitlow had moved to Livingston County just 24 hours before the sale. Defendant then addressed the prosecutor's aiding-and-abetting theory, arguing the same position that he made in his motion for reconsideration filed in this Court—that without advance knowledge that the drugs would be given to Thomas Whitlow, the aiding-and-abetting theory could not be supported. The prosecutor answered the application. The prosecutor made the same arguments it made in its motion for reconsideration filed in this Court. The prosecutor asked that the matter be remanded to this Court "for consideration of the aiding and abetting issue, which was argued and preserved in both the trial court and the Court of Appeals." The prosecutor argued that the aiding-and-abetting theory was supported because "addicts share drugs," and a reasonable inference could be drawn that Hannaford would share the drugs she purchased from defendant with the other occupants of the car.

As explained at the outset, our Supreme Court reversed this Court's opinion. The Court held that there was no record evidence that defendant understood that the drugs would be used in Livingston County. The Court remanded with directions that this Court consider the issues raised by the prosecutor but not addressed by this Court, i.e., the aiding-and-abetting issue and the question of whether to transfer the matter if venue does not lie in Livingston County. *White*, 941 NW2d 59.

## II. DETERMINING VENUE

Determining venue in a criminal case is a two-step process. *McBurrows*, 504 Mich at 313-314. "[F]irst, we must identify the proper venue under the general rule; second, we must determine whether the statutes on which the People rely permit departure from the general rule." *Id*. at 314. "The general venue rule is derived from the common law." *Id*. Michigan law holds that generally, venue is in the county where the crime was committed. *Id*. at 315. To determine where a crime is committed, a court "must scrutinize the statute creating [the] defendant's offense." *Id*. at 317.

In *McBurrows*, two men, Nicholas Abraham and William Ingall, traveled to Wayne County to purchase heroin from the defendant. *Id*. at 311. Abraham gave Ingall money and Ingall purchased the drugs from the defendant. *Id*. Abraham and Ingall "then went to a nearby laundromat parking lot, where they consumed some of the heroin." *Id*. Abraham took Ingall home and then went to his own home, in Monroe County, where he later died of fentanyl toxicity. *Id*. at 311-312. Thus, in *McBurrows*, the defendant's delivery of drugs to Ingall occurred in Wayne County, as did any delivery of drugs from Ingall to Abraham. However, the matter was prosecuted in Monroe County, where the defendant was charged with a violation of MCL 750.317a for delivery of a controlled substance causing death. *Id*. at 312.

In *McBurrows*, our Supreme Court examined MCL 750.317a, and determined that in a prosecution for delivery of a controlled substance causing death, venue is generally in the county where the delivery occurred, regardless of where the death ultimately took place. *Id*. This is because in examining the language of the statute, "whether emphasizing the 'key verbs' or inquiring into 'the nature of the offense,' a violation of MCL 750.317a occurs at the place of the delivery of the controlled substance." *Id*.

That, of course, is only the general rule; statutory exceptions may take venue to another county if those exceptions apply. See *id*. at 324-325. In *McBurrows*, *id*. at 325, the prosecutor first argued that MCL 762.5 applied because the death occurred in Monroe County. MCL 762.5 states that if "any mortal wound shall be given or other violence or injury shall be inflicted, or any poison shall be administered in 1 county by means whereof death shall ensue in another county, the offense may be prosecuted and punished in either county." Our Supreme Court rejected the prosecutor's reliance on that statute, explaining that the defendant "neither imposed anything *on* the decedent nor gave anything *to* the decedent." *McBurrows*, 504 Mich at 326. The Court held that MCL 762.5 required "more direct interaction with the victim" than was present in that case. *McBurrows*, 504 Mich at 326.

The prosecutor in *McBurrows*, *id*. at 326-327, also pointed to MCL 762.8, which states:

Whenever a felony consists or is the culmination of 2 or more acts done in the perpetration of that felony, the felony may be prosecuted in any county where any of those acts were committed or in any county that the defendant intended the felony or acts done in perpetration of the felony to have an effect.

The Court rejected the prosecutor's argument. First, there was "no argument here that defendant 'intended' for any effects of his offense to be felt in Monroe County." *McBurrows*, 504 Mich at 327. The prosecutor argued that an element of the crime was death, and that because the death occurred in Monroe County, an act done in perpetration of the felony took place in Monroe County. *Id.* The Court rejected that argument, explaining:

> "Perpetration" is defined as "[t]he action of perpetrating or performing (an evil deed); the committing (of a crime)[.]" *Oxford English Dictionary* (2d ed.). It carries with it a connotation of culpability or blameworthiness, as though a part of the defendant's endeavor. Thus, the Legislature's use of the word "perpetration" serves to limit the application of MCL 762.8 to the conduct of a criminal actor or his agent. But there is no allegation here that defendant endeavored to deliver this controlled substance to the decedent, or that he intended the decedent's death; nor is it alleged that the decedent intended to die or coordinated his actions with defendant in any way. In the absence of some indication that the decedent was *implicated* in or *culpable* for defendant's action, he has not done something in *perpetration* of defendant's offense. Consequently, MCL 762.8 is not an adequate basis for establishing venue in Monroe County—not because the crime was complete at the point of the delivery, but rather, because the decedent's acts (which were necessary to complete the elements of the offense) were unconnected to defendant's and therefore did not implicate the decedent or make him culpable for defendant's behavior. [*McBurrows*, 504 Mich at 328 (footnotes omitted).][2]

Turning to the case at hand, certainly, defendant delivered drugs to Hannaford in Macomb County. Had Hannaford then consumed the drugs in Macomb County and died, a prosecution of defendant for a violation of MCL 750.317a would likely be appropriate only in Macomb County, regardless of where the death occurred, under the reasoning of *McBurrows*.[3] Or, had defendant delivered the drugs to Hannaford in Macomb County, and Hannaford then delivered those drugs

---

[2] When *McBurrows* was before this Court, this Court likewise held that MCL 762.8 did not authorize venue in Monroe County. *McBurrows*, 504 Mich at 327. This Court did so after characterizing the element of the victim's death as a penalty enhancement; this Court held that the crime was itself complete at the point of sale. *Id.* Our Supreme Court disagreed with that reasoning, explaining that the element of death was an element of the offense, not a penalty enhancement, and thus, the crime was not complete at the point of sale. *Id.* But our Supreme Court agreed with the result reached in this Court for the reasons quoted.

[3] Although under this hypothetical, if there was evidence that defendant intended to kill Hannaford, or that Hannaford intended to die and coordinated her actions with defendant, a prosecution may well be appropriate in the county where Hannaford (hypothetically) died under MCL 762.8. See *McBurrows*, 504 Mich at 327-328.

to Thomas Whitlow while still in Macomb County, all of the deliveries would have taken place in that county, and the prosecution would likely still be appropriate only in Macomb County.

However, what actually occurred in this case is that defendant delivered drugs to Hannaford in Macomb County, and Hannaford then delivered those drugs to Thomas Whitlow in Livingston County. The crucial piece of this case is that defendant is not being charged by the Livingston County Prosecutor for the delivery that took place inside his vehicle in Macomb County; rather, the Livingston County Prosecutor has charged defendant for aiding and abetting the delivery that took place in Livingston County.

The question in this case is whether, by aiding and abetting a delivery of narcotics that took place in Livingston County, defendant may be charged in Livingston County despite the fact that none of *his* acts took place in Livingston County. We think the answer to that question is yes. Having found no published cases directly on point, there is one unpublished decision that is relevant, *People v Markey*, unpublished per curiam opinion of the Court of Appeals, issued March 15, 2007 (Docket No. 264005).

In *Markey*, William Moran was caught in Georgia with large quantities of marijuana and cocaine in his vehicle. *Id*. at 1. He was transporting the drugs from Florida to Michigan. *Id*. Moran's contact in Michigan was the defendant's boyfriend. *Id*. Moran made a deal with police to complete the delivery in Michigan under police surveillance. *Id*. Moran completed the delivery, and the defendant's boyfriend was arrested on multiple drug charges. *Id*. The defendant (girlfriend) was charged "on the basis that she had wired money to Moran, on behalf of her boyfriend, as part of the drug transactions, and that she aided and abetted at least one drug delivery by Moran to defendant's boyfriend." *Id*.

The defendant girlfriend argued that venue was not proper in Presque Isle County. *Id*. at 1-2. This Court explained that venue is generally in the county where a crime is committed, unless the Legislature has provided otherwise. *Id*. at 2. This Court then cited MCL 762.8, which at that time stated that " '[w]henever a felony consists or is the culmination of two or more acts done in the perpetration thereof, the felony may be prosecuted in any county in which any one of the acts was committed.' " *Markey*, unpub op at 2 (Docket No. 264005).[4] This Court then explained:

> One of the acts committed that culminated in the arrest of defendant's boyfriend for receiving cocaine on February 29, 2006 was the boyfriend's receipt of directions on where to meet Moran to pick up the drugs. Moran testified that he would call defendant's boyfriend to make such arrangements at the boyfriend's place of residence in Presque Isle County. Calling defendant's boyfriend was a necessary step to arrange the meeting, and therefore this call constitutes an act that was part of a culmination of acts, resulting in the delivery of the drugs and completing the felony of receiving cocaine with the intent to distribute it. Since that predicate act was in Presque Isle County, the resulting felony was eligible for

---

[4] As this Court's prior unpublished decision in the present case explains, MCL 762.8 was amended effective October 9, 2013, to add the language regarding the defendant's intent that his or her acts have an effect in another county. See 2013 PA 128; *White*, unpub op at 2 n 2 (Docket No. 346661).

prosecution in Presque Isle County. MCL 762.8; [*People v* ]*Webbs*, [263 Mich App 531, 533; 689 NW2d 163 (2004).] Therefore, the trial court properly found Presque Isle County had venue to try the charges of receiving cocaine and marijuana with intent to distribute. [*Markey*, unpub op at 2 (Docket No. 264005).]

Thus, in *Markey*, the defendant girlfriend could be charged in Presque Isle County because she aided and abetted the delivery of drugs, and phone calls were made—not by her, but by others involved in the transaction—to a location in Presque Isle County. That result would seem to counsel in favor of finding venue to be appropriate in Livingston County in this case.

Like the defendant girlfriend in *Markey*, defendant here is not alleged to have done anything at all in Livingston County. But he is alleged to have aided and abetted Hannaford, who delivered controlled substances to Thomas Whitlow in Livingston County. Because that delivery took place in Livingston County, it is undoubtedly proper for the prosecutor to have charged Hannaford in Livingston County. *McBurrows*, 504 Mich at 312. And under the logic of *Markey*, defendant could be charged in Livingston County because one of the acts done in perpetration of the crime—Hannaford's delivery of controlled substances—occurred in Livingston County.

Certainly, *Markey* does not bind this Court, as it is an unpublished opinion. MCR 7.215(C)(1). But unpublished decisions may be considered persuasive, particularly where there is limited caselaw on a particular subject. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004). And it appears that, even putting *Markey* aside, venue in this case would be appropriate in Livingston County given how the prosecutor has charged defendant. Again, there is no dispute that Hannaford delivered the substance in Livingston County, and that venue for that crime would be appropriate in Livingston County. Defendant's act allegedly committed in furtherance of that crime occurred in Macomb County. But pursuant to MCL 762.8, "[w]henever a felony consists or is the culmination of 2 or more acts done in the perpetration of that felony, the felony may be prosecuted in any county where any of those acts were committed . . . ." Here, defendant's felony was the culmination of two or more acts that took place in two different counties, and thus, may be prosecuted in either.

Although the argument was made by defendant first in his motion for reconsideration filed in this Court, defendant contends that the prosecutor's aiding-and-abetting theory fails because there is no evidence that he knew Hannaford would provide the drugs to Thomas Whitlow. Defendant explains the elements of aiding and abetting and contends that without knowledge that the drugs would be passed along to Thomas Whitlow, he cannot be convicted of having aided and abetted Hannaford's delivery of the drugs to Thomas Whitlow.

Defendant's core argument is a factual one; he argues that there is not sufficient evidence to establish probable cause on all of the elements of an aiding-and-abetting theory. There are three elements to an aiding-and-abetting theory: (1) the crime was committed by the defendant or another person, (2) the defendant performed acts or provided encouragement that assisted the commission of the crime, and (3) the defendant either intended the commission of the crime or had knowledge that the principal intended to commit the crime when the defendant gave aid or encouragement. Defendant's argument concerns the final element. Essentially, defendant argues that he had no knowledge that Hannaford would give the drugs to Thomas Whitlow, and thus, no

knowledge that she intended to commit the crime which the prosecutor has charged him with aiding and abetting.

Defendant's argument goes to whether there is probable cause to believe that he is criminally responsible at all for aiding and abetting Hannaford's delivery of a controlled substance to Thomas Whitlow. Defendant's challenge would be better made in a motion to quash the bindover, not in a motion to dismiss for lack of venue. If there is probable cause to support the bindover on an aiding and abetting theory, then venue in Livingston County would seem to follow. As of now, defendant has not disputed whether probable cause exists to support the theory that he aided and abetted Hannaford's delivery of controlled substances to Thomas Whitlow in the circuit court, and he thus stands, at least for now, bound over on that charge. As defendant stands bound over for having aided and abetted Hannaford's delivery, venue is proper in the Livingston Circuit Court. On remand, defendant can challenge the bindover on the basis that the prosecutor has failed to present evidence sufficient to establish that he aided or abetted Hannaford's delivery.

Ordinarily, because we concluded that venue was proper in Livingston County, we might not consider the prosecution's argument concerning the method of disposing of the case in the event that venue was improper. We nevertheless address the argument on the basis of our instruction to do so, and conclude that the prosecution's argument lacks merit.

### III. IMPROPER VENUE IN CRIMINAL CASES

The prosecution relies on MCL 600.1651 for the contention that, if venue was improper in Livingston County, the case should be transferred to Macomb County rather than dismissed. MCL 600.1651 states:

> An action brought in a county not designated as a proper county may nevertheless be tried therein, unless a defendant moves for a change of venue within the time and in the manner provided by court rule, in which case the court shall transfer the action to a proper county on such conditions relative to expense and costs as provided by court rule and section 1653. The court for the county to which the transfer is made shall have full jurisdiction of the action as though the action had been originally commenced therein.

MCL 600.1651 is part of the Revised Judicature Act (RJA), MCL 600.101 *et seq*. The RJA does apply to both criminal and civil proceedings. *People v Houthoofd*, 487 Mich 568, 591; 790 NW2d 315 (2010). However, we are doubtful MCL 600.1651 can be read as applying to criminal proceedings.

First and foremost, we have discovered no cases, published or unpublished, in which MCL 600.1651 has been used to transfer venue in a criminal matter. Rather, in criminal cases where venue is challenged before trial and is found to be lacking, dismissal is the usual remedy. See, e.g., *McBurrows*, 322 Mich App at 421 (explaining that the trial court abused its discretion by denying the defendant's motion to dismiss because venue was improper, and remanding for further

proceedings "consistent with this opinion");[5] *Webbs*, 263 Mich App 531 (affirming the circuit court's dismissal of a criminal case because venue was improper); *People v Pikes*, unpublished per curiam opinion of the Court of Appeals, issued February 21, 2019 (Docket No. 342525) (affirming the dismissal of charges brought in Jackson County on the basis that venue for the offense was in Ingham County).

Second, as a practical matter, it makes very little sense for MCL 600.1651 to apply in a criminal proceeding. For example, a crime undoubtedly took place in Wayne County, but for whatever reason, the Wayne County Prosecutor had not yet prosecuted it. An impatient prosecutor in any other county in this state could charge the crime and then wait for the defendant to challenge venue. At worst, the case would not be dismissed, but simply transferred to Wayne County. This would effectively allow county prosecutors to charge any crime that occurs in this state and then foist the case on the prosecutor for the county in which the crime actually occurred.

Third, the text of the statute makes no sense in the context of a criminal prosecution. The statute states that if an action is transferred, the circuit court shall do so "on such conditions relative to expense and costs as provided by court rule and section 1653." MCL 600.1651. The referenced statute, MCL 600.1653, explains what costs and expenses must be paid when a tort action is transferred, and thus, cannot apply in a criminal case. There is no court rule regarding the transfer of criminal cases because of improper venue. There is a court rule regarding the payment of costs and expenses where a tort action is filed in a court without jurisdiction and is transferred, MCR 2.227. But that court rule again cannot apply in a criminal case. In other words, if MCL 600.1651 is applied in a criminal case, the language regarding costs and expenses has no meaning in that context.

In a similar vein, the statute speaks of a defendant moving for a change of venue "within the time and in the manner provided by court rule . . . ." Again, there is no court rule regarding a change of venue in criminal cases. Chapter 2 of the Court Rules, which concern civil procedure, explain that a defendant must file a motion for a change of venue "before or at the time the defendant files an answer." MCR 2.221(A). In a criminal case, the defendant never files an answer, and thus, MCR 2.221(A) cannot be used to set a time limit on the filing of a motion to

---

[5] The prosecutor notes that when our Supreme Court decided *McBurrows*, it stated that the matter was remanded for further proceedings, *McBurrows*, 504 Mich at 329, and posits that this could mean that on remand, the circuit court could simply transfer the case to the proper county. The prosecutor fails to note that our Supreme Court affirmed this Court's decision, albeit on somewhat different grounds. This Court found it to be an abuse of discretion to deny the motion to dismiss— clearly signaling that dismissal was the appropriate remedy. Further, a search of Monroe County Circuit Court's public records shows that once the McBurrows matter returned to the circuit court, it was dismissed on an order of nolle prosequi in October 2019. A search of Wayne Circuit Court's public records shows that McBurrows was arraigned for one count of delivery of controlled substances causing death in the Wayne Circuit Court on September 25, 2019, and that he is set to stand trial later this year. There is no indication that the case was transferred to Wayne Circuit Court.

change venue. Thus, the language concerning the time for filing such a motion has no meaning in a criminal matter.

Finally, we note that there is a separate statute regarding the ability to transfer venue in criminal cases, which is found, somewhat unsurprisingly, in the Code of Criminal Procedure, MCL 760.1 *et seq*. MCL 762.7 provides that in a criminal case, the circuit court may change venue only upon "good cause shown . . . ." *People v Unger*, 278 Mich App 210, 254 n 12; 749 NW2d 272 (2008) ("Indeed, the general rule is that a trial court may change venue in a criminal case only 'upon good cause shown by either party . . . ' "). The clear implication from all of this is that MCL 600.1651 was not meant to apply to a criminal proceeding. Consistent with the caselaw, were venue improper in Livingston County, the remedy would be dismissal, not to order the matter transferred to Macomb County.

IV. CONCLUSION

Because we again conclude that venue was proper in Livingston County, we affirm.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

-11-